# EXHIBIT A



## State of Connecticut Judicial Branch
## Superior Court Case Look-up



Superior Court Case Look-up Home
Attorney/Firm Juris Number Look-up

Case Look-up
  By Party Name
  By Docket Number
  By Attorney/Firm Juris Number
  By Property Address

Short Calendar Look-up
  By Court Location
  By Attorney/Firm Juris Number
  Motion to Seal or Close
  Calendar Notices

Court Events Look-up
  By Date
  By Docket Number
  By Attorney/Firm Juris Number

Pending Foreclosure Sales

Understanding
Display of Case Information

Contact Us



Comments

FST-CV17-6033244-S

**SRINIVASAN, BHUVANESH v. BANK OF AMERICA, N.A. Et Al**

Prefix/Suffix: [none] Case Type: C90    File Date: 09/11/2017    Return Date: 09/26/2017

Case Detail    Notices    History    Scheduled Court Dates    E-Services Login    Screen Section Help

To receive an email when there is activity on this case, click here.

Information Updated as of: 09/21/2017

| Case Information |
| --- |

Case Type: C90 - Contracts - All other
Court Location: STAMFORD JD
List Type: No List Type
Trial List Claim:
Last Action Date: 09/11/2017 (The "last action date" is the date the information was entered in the system)

| Disposition Information |
| --- |

Disposition Date:
Disposition:
Judge or Magistrate:

| Party & Appearance Information |
| --- |

| Party | | No Fee Party | Category |
| --- | --- | --- | --- |
| P-01 | **BHUVANESH SRINIVASAN** | | Plaintiff |
| | Attorney: TINLEY RENEHAN & DOST LLP (402031) File Date: 09/11/2017<br>NEW 60 NORTH MAIN STREET<br>2ND FLOOR<br>WATERBURY, CT 06702 | | |
| D-01 | **BANK OF AMERICA, N.A.**<br>Non-Appearing | | Defendant |
| D-02 | **BAYVIEW LOAN SERVICING, LLC**<br>Non-Appearing | | Defendant |

**Viewing Documents on Civil (including Housing) Cases:** A logged-in appearing self-represented party with electronic access to the case and a logged-in appearing attorney can view pleadings, orders and other documents that are *paperless* by selecting the document link below. Any attorney or self-represented party *without* an appearance on the case can look at court orders and judicial notices that are *electronic* on this case by choosing the link next to the order or selecting "Notices" from the tab at the top of this page and choosing the link to the notice on this website. Pleadings and other documents that are paperless can be viewed during normal business hours at any Judicial District courthouse and at many geographical area courthouses. Any pleadings or documents that are **not paperless** can be viewed during normal business hours at the Clerk's Office in the Judicial District where the case is. Any documents protected by law or by court order that are not open to the public cannot be viewed online and can only be viewed in person at the clerk's office where the file is located by those authorized by law or court order to see them.
Note: On Small Claims cases filed before 10/16/2017 the Affidavit of Debt is not available publically over the internet.

| Motions / Pleadings / Documents / Case Status | | | | |
| --- | --- | --- | --- | --- |
| Entry No | File Date | Filed By | Description | Arguable |
| | 09/11/2017 | P | SUMMONS NEW | |
| | 09/11/2017 | P | COMPLAINT NEW | |
| 100.30 | 09/11/2017 | P | RETURN OF SERVICE NEW | No |

| Scheduled Court Dates as of 09/20/2017 |
| --- |

| # | **Date** | **Time** | **Event Description** | **Status** |
|---|----------|----------|----------------------|------------|
| FST-CV17-6033244-S - SRINIVASAN, BHUVANESH v. BANK OF AMERICA, N.A. Et Al | | | | |
| | | | No Events Scheduled | |

Judicial ADR events may be heard in a court that is different from the court where the case is filed. To check location information about an ADR event, select the **Notices** tab on the top of the case detail page.

Matters that appear on the Short Calendar and Family Support Magistrate Calendar are shown as scheduled court events on this page. The date displayed on this page is the date of the calendar.

All matters on a family support magistrate calendar are presumed ready to go forward.

The status of a Short Calendar matter is not displayed because it is determined by markings made by the parties as required by the calendar notices and the civil or family standing orders. Markings made electronically can be viewed by those who have electronic access through the Markings History link on the Civil/Family Menu in E-Services. Markings made by telephone can only be obtained through the clerk's office. If more than one motion is on a single short calendar, the calendar will be listed once on this page. You can see more information on matters appearing on Short Calendars and Family Support Magistrate Calendars by going to the Civil/Family Case Look-Up page and Short Calendars By Juris Number or By Court Location.

Periodic changes to terminology that do not affect the status of the case may be made.

This list does not constitute or replace official notice of scheduled court events.

**Disclaimer:** For civil and family cases statewide, case information can be seen on this website for a period of time, from one year to a maximum period of ten years, after the disposition date. If the Connecticut Practice Book Sections 7-10 and 7-11 give a shorter period of time, the case information will be displayed for the shorter period. Under the Federal Violence Against Women Act of 2005, cases for relief from physical abuse, foreign protective orders, and motions that would be likely to publicly reveal the identity or location of a protected party may not be displayed and may be available only at the courts.

Attorneys | Case Look-up | Courts | Directories | EducationalResources | E-Services | FAQ's | Juror Information | News & Updates | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2017, State of Connecticut Judicial Branch

Page Created on 9/21/2017 at 10:38:08 AM

**SUMMONS - CIVIL**
JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**See other side for instructions**

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
- [X] "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| **123 Hoyt Street, Stamford, CT 06905** | ( **203** ) **965**-5308 | September 26, 2017<br>Month / Day / Year |

| [X] Judicial District | [ ] Housing Session | [ ] G.A. Number: | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349)<br>**Stamford** | Case type code *(See list on page 2)*<br>Major: **C**   Minor: **90** |
|---|---|---|---|---|

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)*<br>**Tinley, Renehan & Dost, LLP, 60 North Main Street, 2nd Flr., Waterbury, CT 06702** | Juris number *(to be entered by attorney only)*<br>**402031** |
|---|---|

| Telephone number *(with area code)*<br>( **203** ) **596**-9030 | Signature of Plaintiff *(If self-represented)* |
|---|---|

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | [ ] Yes   [X] No | Email address for delivery of papers under Section 10-13 *(if agreed to)* |
|---|---|---|

| Number of Plaintiffs: **1** | Number of Defendants: **2** | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: **SRINIVASAN, BHUVANESH**<br>Address: **263 Dans Hwy, New Canaan, CT 06840** | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: **BANK OF AMERICA, N.A., 100 North Tryon Street, Charlotte, NC 28255**<br>Address: **c/o Bank of America, 30 State House Square, Suite 19, Hartford, CT 06103** | D-01 |
| Additional Defendant | Name: **BAYVIEW LOAN SERVICING, LLC, 4425 Ponce De Leon Boulevard, Coral Gables, FL 33146**<br>Address: **c/o Corporation Service Company, 50 Weston Street, Hartford, CT 06120-1537** | D-02 |
| Additional Defendant | Name:<br>Address: | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | [X] Commissioner of the Superior Court<br>[ ] Assistant Clerk | Name of Person Signing at Left<br>**Amita P. Rossetti, Esq.** | Date signed<br>**08/21/2017** |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.<br>b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.<br>c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.<br>d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date | Docket Number |
|---|---|---|---|

*(Page 1 of 2)*

RETURN DATE: SEPTEMBER 26, 2017     :      SUPERIOR COURT
                                                :

BHUVANESH SRINIVASAN               :      J.D. OF STAMFORD

V.                                             :

                                                :

BANK OF AMERICA, N.A. &             :      AT STAMFORD
                                                :

BAYVIEW LOAN SERVICING, LLC     :      AUGUST 21, 2017

## COMPLAINT

### The Parties

    1.      The plaintiff, Bhuvanesh Srinivasan (the "plaintiff"), is a Connecticut resident and owner of a parcel of a residential real estate property located at 263 Dans Highway, New Canaan, CT (the "Property"), which was financed via a mortgage and note delivered to Countrywide Home Loans ("Countrywide").

    2.      The defendant, Bank of America, N.A. (the "defendant"), is a corporation with a principal place of business at 7105 Corporate Drive in Plano, Texas.

    3.      The defendant, Bayview Loan Servicing, LLC ("Bayview"), whose business address is 4425 Ponce de Leon Boulevard, in Coral Gables, Florida, is the current servicer of the Plaintiff's Note and Mortgage on the Property as of August 1, 2015.  Despite Bayview acting as the servicer since August 1, 2015, Bank of America also remained actively involved with the plaintiff's loan.

**Facts**

4.      On May 8, 2007, the plaintiff became indebted to Countrywide, in the amount of $1,808,000 under the terms of a promissory note (the "Note") that the plaintiff executed in favor of Countrywide, bearing an interest rate of 6.375%. The Note was secured by a Mortgage Deed (the "Mortgage") on the Property that was executed by the plaintiff in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide.

5.      At some point after the plaintiff executed the Note and Mortgage, the Note was pooled together with other mortgage notes and "securitized." Legal title to said securitized mortgage notes is claimed to be held by Bank of New York Mellon, as trustee, and interests in the revenues derived from said securitized mortgage notes was allegedly sold to investors as mortgage-backed securities.

6.      After the plaintiff's Note purportedly became securitized, Countrywide retained valuable servicing rights relating to the plaintiff's Note, where Countrywide earned a monthly servicing fee that was based upon the principal value of the mortgage notes that it was servicing for the defendant Trustee, as the defendant's authorized agent. In said capacity, Countrywide performed servicing on the plaintiff's Note and Mortgage, which servicing included collecting and processing mortgage payments (including escrow payments for taxes and insurance), handling communications with the plaintiff concerning the mortgage, and handling the negotiation and implementation of mortgage loan modifications.

7.      In 2008, Bank of America Corporation acquired Countrywide and thereafter it became the mortgage servicer for the plaintiff's Note and Mortgage, acting either directly or through one or more of its subsidiary companies, including BAC Home Loans Servicing, LP and Bank of America, N.A. (collectively "Bank of America").

8.      At all times relevant hereto, Bayview was acting as the authorized agent and sub-servicer of the co-defendant, Bank of America.

9.      The plaintiff continued to make payments pursuant to the terms of his mortgage, until his financial situation changed.

10.     As a consequence of the financial crisis of 2008 and beyond, Bank of America received significant assistance and subsidies on the order of billions of dollars from the United States Treasury (the "Bailout"). The Bailout effectively brought Bank of America's borrowing costs to nearly zero percent, with the express federal policy goal of having lower interest rates trickle down to the American consumer.

11.     The plaintiff was a self-employed, small business owner at the time he received the mortgage loan that is the object of the Note and Mortgage.

12.     The broader economic conditions that plagued Bank of America had also significantly impaired the plaintiff's earnings and his ability to meet his payroll and finance his business operations.

13.     Through 2010 and 2011, the plaintiff made inquiries to Bank of America regarding his refinancing the Note and Mortgage, with the goal of reducing the interest rate payable under the terms of the Note from 6.375 percent to a rate more reflective of the broad reduction in interest rates.

14.     Bank of America represented to the plaintiff on multiple occasions that, given the applicable post-crisis lending guidelines, he needed to be in default on his Mortgage in order to qualify for suitable mortgage refinancing options as a self-employed borrower.

15.     In February 2012, the plaintiff defaulted upon his mortgage payments, after having paid approximately $535,000 in interest alone in less than five years.

16.     In reliance upon Bank of America's past representations and recommendations that, in defaulting on his mortgage payments he could qualify for mortgage refinancing, the plaintiff applied for a modification of his Note and Mortgage with Bank of America (the plaintiff's "Mortgage Modification Application").

17.     At the time of plaintiff's default in 2012, the Attorney Generals of nearly all fifty States, including Connecticut, were pursuing claims against Bank of America for a wide variety of abusive and fraudulent practices in connection with its mortgage servicing practices generally and its processing of mortgage modification applications specifically, alleging that Bank of America "violated, among other laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiff States."

18.     In April 2012, Bank of America agreed to a settlement with forty-nine (49) States and the United States Department of Justice (the "Consent Judgment"), whereby it agreed to pay approximately $10 billion in fines, restitution, and consumer relief compensation, in addition to agreeing to refrain from further abusive and fraudulent practices in reviewing and processing mortgage modification applications.

19.     More specifically, Bank of America agreed to adhere to a strict set of practices, standards, and timelines for all future mortgage modification applications (the "Servicing Standards").

20.     The Servicing Standards of the Consent Judgment were a material component to the States' settlement, as emphasized by the Connecticut Attorney General in his official announcement of the settlement: "As important as the financial relief, the settlement requires the banks to change the way they service distressed loans and it holds the banks accountable for what have become familiar abuses. For the first time, state attorneys general will have authority to monitor how federally regulated banks comply with the new servicing rules and to impose

heavy penalties on those banks that fall short." As such, Connecticut adopted a formal public policy of ensuring that the settling banks, including Bank of America, adhered to the Servicing Standards of the Consent Judgment.

21.    Various representatives of Bank of America repeatedly represented to the plaintiff that it would strictly abide by the Servicing Standards in reviewing and processing the plaintiffs' Mortgage Modification Application upon submission. The Bank of America representative assigned to the plaintiff instructed the plaintiff to call a special "DOJ Hotline" maintained by Bank of America, which informed the plaintiff that any complete loan modification application would receive either an approval or decline decision within thirty (30) days, as per the Servicing Standards, and further that the plaintiff can expect strict adherence to the standards and guidelines of the Servicing Standards of the Consent Judgment, as set forth on their website to all loan applicants, such as the plaintiffs.

22.    The plaintiff submitted a completed Mortgage Modification Application to Bank of America no later than November 8, 2012.

23.    In reliance upon Bank of America's representation that it would approve or decline the plaintiff's Application within thirty (30) days, the plaintiff caused certain illiquid business assets to be sold in a rushed fashion at a highly discounted value shortly prior to submitting his Mortgage Modification Application, in order to qualify for the loan modification he was seeking.

24.    Under the Servicing Standards of the Consent Judgment, which Bank of America represented that it would follow, Bank of America was obligated to provide a response to the plaintiff within thirty (30) days of its receipt of a substantially complete Mortgage Modification Application.

25.    Upon receiving the plaintiff's completed Mortgage Modification Application, Bank of America reverted to past fraudulent practices, which were the object of the Consent

Judgment, of falsely claiming to lose paperwork and repeatedly asking for documents to be resubmitted, with full knowledge that said documents had already been submitted and received.

26.     Rather than render a decision upon the plaintiff's completed Mortgage Modification Application within thirty (30) days, on or before December 8, 2012, Bank of America filed a foreclosure action against the plaintiff a few months later in March 2013 and deliberately engaged in a process of obstructing the plaintiff's Mortgage Modification Application.

27.     Given that Bank of America represented to the plaintiff that he should default on his loan in order to be considered for the modification, and given the plaintiff's timely cooperation and provision of all materials and documents requested and the defendant's representations that it would modify his loan, the foreclosure action of March 2013 should not have been filed.

28.     Bank of America knew that the plaintiff was a self-employed, small business owner, through his loan modification documents and therefore, knew or should have known the decision to file a foreclosure action against the plaintiff, despite its own recommendation that he default on his loan to obtain said modification, would have a negative impact on his business reputation.

29.     Bank of America's failure to properly process the plaintiff's Mortgage Modification Application, where it instead filed a foreclosure action against the plaintiff, caused severe damage to the plaintiff's business reputation, which thereby caused the plaintiff to suffer severe and foreseeable economic damages and losses.

30.     By letter dated April 16, 2013, Bank of America denied the plaintiff's Mortgage Modification Application by falsely and fraudulently claiming that the plaintiff did not submit all of the requested documents.

31.     The plaintiff was given thirty (30) days to appeal the denial of his Mortgage Modification Application, which he exercised immediately.

32.     By letter dated May 3, 2013, Bank of America admitted that the grounds for the plaintiff's Appeal were valid, admitting that all of the documents required in connection with the Mortgage Modification Application had indeed been submitted by the plaintiff in a timely manner.

33.     By letter dated May 3, 2013, Bank of America falsely and fraudulently claimed that the plaintiff's income was insufficient to approve his Mortgage Modification Application, pursuant its stated condition that his modified mortgage payment cannot exceed 55% of his income.

34.     The plaintiff was given thirty (30) days to appeal this new denial of his Mortgage Modification Application, based upon his having inadequate income, and the plaintiff immediately appealed said denial.

35.     In May 2013, the plaintiff placed a call to Bank of America in order to investigate its assertion that his income was inadequate for his Mortgage Modification Application, and the plaintiff spoke to a Bank of America representative who disclosed that Bank of America had recorded the plaintiff's annual income as being one dollar ($1.00), deliberately ignoring the income information submitted with the plaintiff's Mortgage Modification Application.

36.     By letter dated May 22, 2013, Bank of America admitted that the plaintiff's grounds for his second appeal were also valid, acknowledging that Bank of America's actual calculation of the plaintiff's monthly income was $31,861.07, as opposed to annual income of one dollar ($1.00).

37.     By letter dated May 22, 2013, Bank of America issued a new, third reason for denying the plaintiff's Mortgage Modification Application. Bank of America asserted that, based upon its valuation of the Property at $1.7 million, the Net Present Value of foreclosing on the Property was more profitable to the investor holding the Note and Mortgage than if the Note and Mortgage were to be modified, which formed the new basis for Bank of America to deny the plaintiff's Mortgage Modification Application. The plaintiff was given thirty (30) days to appeal this latest denial, which plaintiff did in a timely manner.

38.     The plaintiff attended the first mediation session with Bank of America as part of the foreclosure mediation on May 30, 2013.

39.     On June 17, 2013, the plaintiff filed an Appeal of Bank of America's May 22, 2013 denial of his Mortgage Modification Application, wherein the plaintiff asserted that Bank of America's valuation of the Property at $1.7 million was intentionally and fraudulently inflated by Bank of America for the explicit purpose of denying the plaintiff's Mortgage Modification Application. The plaintiff contended that if a more accurate Property valuation were used, his Mortgage Modification Application would subject to automatic approval, as eventually proved to be the case.

40.     In response to the plaintiff's Appeal of the denial of his Mortgage Modification Application, at the second mediation session on July 23, 2013, attorneys for Bank of America informed the plaintiff that an independent appraisal of the Property was required and would be used to evaluate his Appeal, pursuant to the Servicing Standards of the Consent Judgment.

41.     Relying upon the representations of Bank of America's attorneys, the plaintiff obtained an independent appraisal of the Property ("Independent Appraisal"), which estimated its value at $1,485,000.

42.     The plaintiff submitted the Independent Appraisal to Bank of America during the third session of the mediation which occurred on or about September 10, 2013.

43.     Upon receiving the Independent Appraisal at the mediation, Bank of America was obligated, pursuant to the Servicing Standards, to use said valuation of $1,485,000 in the formula to recalculate whether it would be more profitable to the investor to foreclose upon the Property or modify the Mortgage.

44.     Bank of America again represented to the plaintiff that it would abide by the Servicing Standards and use the plaintiff's Independent Appraisal to perform said recalculations in an automated way with no human subjectivity, yet it repeatedly refused to do so, responding instead with increasingly false statements that it had never received the appeal or independent appraisal as part of its ongoing obstruction of the proper processing of the plaintiff's Mortgage Modification Application.

45.     Despite Bank of America receiving notice of the plaintiff's third Appeal on June 17, 2013, as confirmed by email correspondence, within the thirty-day time period for the plaintiff to submit his Appeal and an Independent Appraisal as requested, which included his Independent Appraisal, Bank of America and its attorneys falsely and fraudulently conspired to deny that they had received timely notice of plaintiff's Appeal and his Independent Appraisal.

46.     On or about October 30, 2013, the plaintiff spoke to an administrative employee of the law firm employed by Bank of America to pursue foreclosure on the Property, and said employee acknowledged receipt of the Independent Appraisal via email correspondence and stated that the attorney scheduled to attend the next court-supervised mediation was forwarded a copy of the Independent Appraisal.

47.     On November 1, 2013, at the fourth court-supervised mediation session, Bank of America's attorneys asked to terminate the mediation by falsely asserting that they never

received timely notice of the plaintiff's Appeal or the Independent Appraisal, despite e-mail correspondence proving both statements to be false.

48.     The plaintiff presented a complaint to the Connecticut Attorney General's Office concerning Bank of America's repeated violations of the Servicing Standards and its blatantly false statements of not having received timely notice of plaintiff's appeal or the Independent Appraisal.

49.     In response to an inquiry from Connecticut Attorney General's Office regarding the plaintiff's complaint, Bank of America responded with a letter dated December 4, 2013, which deceptively employed the letterhead of the "Office of the CEO and President" of Bank of America (the "CEO Letter").

50.     The signatory of the CEO letter, April Juarez, was neither an executive in the Office of the CEO and President nor even an employee of Bank of America at the time it was authored.

51.     Upon information and belief, Bank of America employed the CEO Letter as a deceptive practice designed to discredit consumer complaints to regulatory authorities by fraudulently creating the impression that the matter was considered at the highest levels of Bank of America, when it was merely considered by a third-party debt collection firm with access to Bank of America's letterhead. Said deceptive practice constituted a violation of the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., prohibiting any debt collector from the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

52.     In said CEO Letter, which was copied to the Deputy Attorney General of the State of Connecticut, Bank of America again brazenly and falsely denied receiving the plaintiff's Independent Appraisal and thereby sought to terminate the mediation.

53.     After the fifth mediation session with the Court on December 19, 2013, because of Bank of America's refusal to negotiate and participate in good faith, the mediator intended to file a notice of non-compliance.

54.     In late January 2014, more than a year after the plaintiff had submitted a completed Mortgage Modification Application to Bank of America, Bank of America, through its attorneys, presented a letter to the plaintiff stating that it had just received the Independent Appraisal on January 3, 2014 and that the plaintiff did not submit a notice of Appeal within thirty (30) days of its May 22, 2013 denial of his Mortgage Modification Application, despite Bank of America being in possession of email correspondence proving both these statements to be false.

55.     At the sixth mediation session on January 29, 2014, at the advice of their counsel, Bank of America finally opened the denial of the third appeal.

56.     In January 2014, Bank of America, through its attorneys, made the deliberately false statement that it had reviewed and considered the Independent Appraisal submitted by the plaintiff and it reaffirmed its denial of the plaintiff's Mortgage Modification Application.

57.     Under the Servicing Standards, Bank of America was required to make a disclosure to the borrower of all inputted values used to calculate Net Present Value, when issuing a denial of a mortgage modification application that was based upon Net Present Value.

58.     When the plaintiff demanded that Bank of America make the required disclosure of all inputted values it used to deny his Mortgage Modification Application, Bank of America admitted that it had not run any such calculations of Net Present Value and it retracted its denial.

59.     After admitting that it had not utilized the plaintiff's Independent Appraisal in evaluating the plaintiff's Mortgage Modification Application, contradicting its own prior false

statements, Bank of America then offered to evaluate the plaintiff's Mortgage Modification Application using accurate valuation figures derived from the plaintiff's Independent Appraisal.

60.     In or about April 2014, during the seventh court-ordered mediation session, Bank of America stated that it used the Independent Appraisal value of $1,485,000 in evaluating the plaintiff's Mortgage Modification Application, which was originally submitted in November 2012 and was able to offer the plaintiff the modification he had been seeking since that time.

61.     Using the inputted Property value of $1,485,000, Bank of America's modification evaluation formula automatically approved the plaintiff for a Trial Payment Plan (TPP) on April 3, 2014, which was to be offered as a permanent modification upon the plaintiff successfully making three trial payments.

62.     Bank of America represented to the plaintiff that his modified monthly payment would be $9,963.21.

63.     The terms of the final loan modification were not fully disclosed to the plaintiff at the time he made his three (3) trial payments.

64.     After inducing the plaintiff to make three monthly payments of $9,963.21 pursuant to the TPP, Bank of America revealed to the plaintiff that the monthly payment of $9,963.21 was a three-year teaser rate, such that the plaintiff would be obligated in the remaining twenty-three years of its modified mortgage proposal to make monthly payments in excess of $11,000 with escalating interest rates.

65.     Bank of America's switching the modification payment terms after the plaintiff had already committed over $27,000 in payments towards the modification was unfair and deceptive conduct involving a classic "bait and switch" tactic designed to coerce the plaintiff into accepting more onerous terms.

66.     Plaintiff was unable to modify his mortgage payments given the defendants' unwillingness to cooperate for a period of approximately two years.

67.     After obstructing the plaintiff's Mortgage Modification Application for nearly two years, initiating a foreclosure action against the plaintiff, and inducing the plaintiff to make three monthly payments towards a modification totaling over $27,000, Bank of America informed the plaintiff of the full terms of the modification and that he had ten (10) days to accept or reject its mortgage modification proposal.

68.     The plaintiff accepted Bank of America's modification terms under duress, which Bank of America intentionally inflicted upon the plaintiff by means of its deceptive and false statements, fraudulent misconduct, and unlawful actions, as described above.

69.     The loan modification documents were signed by Bank of America and August 21, 2014 and recorded on the New Canaan land records on August 26, 2014 at Page 67 of Volume 923.

70.     Upon the plaintiff accepting Bank of America's mortgage modification proposal, the principal balance of the plaintiff's mortgage debt increased from approximately $1.8 million to over $2.1 million, which was a direct consequence of Bank of America's deceptive conduct designed to obstruct and delay the plaintiff's Mortgage Modification Application.

71.     As a direct consequence of Bank of America's deceptive conduct, obstructing and delaying the plaintiff's Mortgage Modification Application, Bank of America's monthly servicing revenues, based upon the new principal balance of over $2.1 million, went up by 16% from $301 per month to approximately $350 per month thereafter.  Bank of America was engaged in a pattern or practice of doing this in the aggregate, thereby making a profit on the services revenues at the expense of the borrowers, such as the plaintiff.

72.     The plaintiff continued to make approximately five (5) payments after the loan modification and pursuant to its terms, until January 2015, despite disputing the validity of the debt.

73.     The plaintiff notified the defendants that he disputed the validity of the debt as stated in the loan modification documents, as the unpaid principal balance now included interest and fees due to delay on the part of the defendants.

74.     The defendants acknowledged that the plaintiff disputed the validity of the debt.

75.     Despite the plaintiff attempting to address his concerns with the defendants, they filed another foreclosure lawsuit in or about May 2016.

76.     They have since refused to cooperate with the plaintiff to address his concerns, and continue to employ unfair tactics.

77.     At all relevant times, the defendants and their agents, servants and/or employees routinely engaged in a pattern of abuse, false statements, fraudulent misconduct, and self-dealing that was designed to inflate its mortgage servicing fees, which the defendants have permitted for their own benefit, despite the fact that said practices are foreseeably detrimental to borrowers such as the plaintiff.

78.     As a direct result of Defendants' actions, the plaintiff's equity in his house decreased and his mortgage amount increased substantially.

79.     As a further result of the Defendants' actions, the plaintiff has suffered and continues to suffer from emotional distress, pain and suffering, injury, harm and loss.  The effects of said actions by Defendants' have manifested themselves by affecting the plaintiff's sleep and stress level and overall well-being.

**FIRST COUNT (Breach of Contract against Bank of America):**

1-79.   Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of the First Count.

80.   Plaintiff and Defendant Bank entered into a contract that would lower his mortgage payments.

81.   Defendant agreed to make three (3) consecutive payments under TPP and upon successful completion, Defendant Bank would modify Plaintiff's mortgage pursuant to said trial payment plan and thus, lower the plaintiff's mortgage payment to avoid foreclosure given his financial difficulties at the time.

82.   Despite Plaintiff's successful and timely completion of the first three (3) payments, Defendant Bank forced the plaintiff into a modification at a monthly payment that increased substantially after the first three years.

83.   Defendant Bank required Plaintiff to accept or reject said modifications within a ten (10) day period or risk foreclosure.

84.   Despite accepting Plaintiff's payments, Defendant Bank did not modify his mortgage at a fixed monthly payment equal to the trial payments.

85.   Further, despite its agreement with the plaintiff that it would abide by the terms of the Servicing Standards, the Defendant Bank did not do so.

86.   Plaintiff suffered ascertainable damages as a result.

**SECOND COUNT (CUTPA against Bank of America and Bayview):**

1-79.   Paragraphs 1 through 79 are hereby incorporated by reference and made

Paragraphs 1 through 79 of this Second Count.

80.     At all times mentioned herein, the defendant was engaged in the conduct of trade or commerce as defined in §42-110a of the Connecticut General Statutes in connection with its claims to be the owner of the plaintiff's Note and Mortgage.

81.     Defendant Bank's conduct constituted a breach of contract, accompanied by aggravating circumstances, including but not limited to the following:

a.     Defendant Bank, in effect, strung Plaintiff along for twenty-one (21) months, without modifying his loan;

b.     Defendant Bank has strung Plaintiff along for nearly two (2) years in the loan modification process, all the while claiming that he was the reason that it was not going to approve his application to modify his loan;

c.     Defendant Bank required the plaintiff to continually submit documentation and continued to send duplicate after duplicate of documentation despite Plaintiff properly and fully completing and sending in said documentation;

d.     Defendant Bank repeatedly changed the representative in charge of the loan modification, thereby requiring plaintiff to attempt to describe the process to each individual representative from the beginning of its very tortured history to bring them up to speed;

e.     accepting payments pursuant to TPP and then refusing to honor its agreement to modify his loan for that monthly payment;

f.     modifying the plaintiff's loan after an unnecessarily extensive period of time, thereby causing the plaintiff to incur several hundreds of thousands of dollars in interest and penalties through no fault of his own;

g.     making representations that a loan modification would lower Plaintiff's monthly payments when it knew that he was attempting to modify the loan in order to lower his monthly payments in order not to be foreclosed upon;

h.     Defendant Bank represented that the plaintiff should default on his loan in order to be considered for the modification process, in order to lower his monthly payment.

82.     Defendant Bank's practices, methods and actions as described herein, offend public policy, are unfair, deceptive, unethical, oppressive, unreasonable and/or outrageous and

did, in fact, cause Plaintiff damages, injury and violated his rights as they exist by statute, and

principles of law and equity.

83.    Plaintiff suffered ascertainable losses as a result of the Defendant Bank's conduct,

including but not limited to the following:

a.  incurring unnecessarily high interest rate charges on his mortgage principal for a
    period close to two years, resulting in excess interest charges of over one hundred
    thousand dollars that has been added to the plaintiff's modified mortgage
    principal;
b.  the plaintiff was induced to sell certain illiquid business assets in a rushed
    fashion at a highly discounted value;
c.  the plaintiff's business reputation was severely impaired, causing the plaintiff to
    forego renewal of several professional licenses and registrations and thereby
    causing the plaintiff to suspend entire line of business;
d.  the Defendant Bank's conduct violated the Fair Debt Collection Act and/or
    policies underlying said act;
e.  the Defendant Bank's conduct violated the Fair Credit Reporting Act and/or the
    policies underlying said act;
f.  the Defendant Bank's conduct violated the Truth in Lending Act and/or the
    policies underlying said act;
g.  the Defendant Bank's conduct violated RESPA and/or the policies underlying
    said act;
h.  the Defendant Bank's conduct violated the Gramm Leach Bliley Act and/or the
    policies underlying said act when it induced him to disclose financial information
    for purposes of obtaining a modification which would lower his monthly
    payments at one rate, but ultimately did not deliver;
i.  the defendant has charged substantial attorneys' fees against the plaintiff's
    mortgage, which has been added to the plaintiff's modified mortgage principal;
j.  the plaintiff's credit has been harmed; and
k.  the plaintiff was unfairly coerced into accepting a mortgage modification that
    includes future stepped up monthly payments and future escalating interest rates
    that are above and beyond the fixed monthly payments and fixed interest rate that
    the plaintiff understood he was accepting, when he agreed to commit to over
    $27,000 in trial payments towards the defendant's mortgage modification
    proposal.

**THIRD COUNT (Negligent Misrepresentation against Bank of America and Bayview):**

1-79.   Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Third Count.

80.   Defendant Bank made material representations to Plaintiff when it continued to represent that his cooperation in TPP would lead to a final loan modification which would lower his monthly payments to a particular sum.

81.   Defendant Bank represented that the loan modification process would be quick and that it would follow the Servicing guidelines.

82.   Defendant Bank did not freeze all credit reporting until the loan was modified in full, continually reporting that the plaintiff was delinquent in his payments, despite the Bank's delay.

83.   Plaintiff reasonably relied on said representations to his detriment.

84.   Defendant Bank knew or should have known that the final modification would not have lowered his monthly payment.

85.   Defendant Bank knew or should have known that it was erroneously reporting that Plaintiff was delinquent in mortgage payments.

86.   Plaintiff suffered ascertainable damages as a result of his reliance on the Defendant Bank's representations.

**FOURTH COUNT (Innocent Misrepresentation against Bank of America and Bayview):**

1-79.   Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Fourth Count.

80-86.   Paragraphs 80 through 86 of the Third Count are hereby incorporated by reference and made Paragraphs 80 through 86 of this Fourth Count.

**FIFTH COUNT (Intentional Misrepresentation against Bank of America and Bayview):**

1-79.   Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Fifth Count.

80.      Defendant Bank made material representations to Plaintiff when it continued to represent that his cooperation in TPP would lead to a final loan modification which would lower his monthly payments.

81.      Defendant Bank further represented that it would freeze all credit reporting until loan was modified in full.

82.      Defendant Bank recklessly advised Plaintiff as to how to execute the loan documentation.

83.      Plaintiff reasonably relied on said representations to his detriment.

84.      Defendant Bank knew that the final modification would not lower the plaintiff's monthly payments permanently.

85.      Defendant Bank knew that it was erroneously reporting that Plaintiff was delinquent in mortgage payments.

86.      Plaintiff suffered ascertainable damages as a result of his reliance on the Defendant Bank's representations.

**SIXTH COUNT (Negligent Infliction of Emotional Distress against Bank of America and Bayview):**

1-79.   Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Sixth Count.

80.   Defendants' conduct in effect strung Plaintiff along for twenty-one (21) months in the loan modification process, all the while knowing that it was not going to modify his loan, requiring him to continually submit documentation and repeatedly attempt to describe the process to each individual representative from the Plaintiff corporation who was assigned to his loan, and accept the payments pursuant to TPP and then refusing to honor its agreement to modify his loan.

81.   Defendants' conduct created an unreasonable risk of causing distress to Plaintiff.

82.   Plaintiff's distress was foreseeable to the Defendants.

83.   Plaintiff's emotional distress was severe enough that it might result in illness or bodily harm to him.

84.   Defendants' conduct was and continues to be the cause of Plaintiff's distress.

**SEVENTH COUNT (Intentional Infliction of Emotional Distress against Bank of America and Bayview):**

1-79.   Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Seventh Count.

80.   Defendants' conduct in effect strung Plaintiff along for twenty-one (21) months pursuant to TPP in the loan modification process, all the while knowing that it was not going to modify his loan, requiring him to continually submit documentation, resending the same

documentation that he had submitted and repeatedly attempt to describe the process to each individual representative from the Defendant who was assigned to her loan, and accept the payments pursuant to TPP and then refusing to honor its agreement to modify her loan.

81.     Defendants' conduct created an unreasonable risk of causing distress to Plaintiff.

82.     Plaintiff's distress was foreseeable to the Defendants.

83.     Plaintiff's emotional distress was severe enough that it might result in illness or bodily harm to him.

84.     Defendants' conduct was and continues to be the cause of Plaintiff's distress.

**EIGHTH COUNT (Violation of the Fair Credit Reporting Act against Bank of America):**

1-79.     Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Eighth Count.

80.     Defendant Bank's initial reports to credit bureau were improper in that they did not comply with the requirements of the Fair Credit Reporting Act and should not have been made while the loan modification process was ongoing and delayed through no fault of the plaintiff.

81.     Defendant Bank continues to report to the credit bureau despite ongoing litigation and attempted good faith negotiation on the part of the plaintiff.

82.     Plaintiff's credit continues to suffer as a result of this reporting and he has been damaged by such reporting.

**NINTH COUNT (Promissory Estoppel against Bank of America):**

1-79.     Paragraphs 1 through 79 are hereby incorporated by reference and made

Paragraphs 1 through 79 of this Ninth Count.

80.     Defendant Bank made a promise or representation that it would modify the plaintiff's loan, thereby reducing his monthly payment, in order to help him afford his monthly payments, given the financial crisis of 2008 and his subsequent hardship and/or reduction in income.

81.     Defendant Bank also represented to the plaintiff that it would follow the Servicing Standards as outlined in the Consent Judgment.

82.     Defendant Bank further represented to the plaintiff that in order to become eligible for a loan modification, which would be approved in thirty (30) days from receipt of a completed application, the plaintiff would need to default on his mortgage.

83.     Plaintiff relied on said promises to his detriment.

84.     Plaintiff suffered harm as a result of his reliance on said promise as his monthly payments increased, he incurred substantial fees and interest as a result of the Defendant Bank's delay, and the Plaintiff is currently defending a foreclosure action.

**TENTH COUNT (False Light against Bank of America):**

1-79.     Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Ninth Count.

80.     Defendant Bank filed a lawsuit in March 2013 despite the plaintiff's submission of his complete Mortgage Modification Application as of November 8, 2012.

81.     Defendant Bank represented that the Property was being foreclosed upon through the filing of the March 2013 lawsuit and various online listings with Zillow, Trulia and other similar sites.

82.     Defendant Bank represented to the public that the plaintiff was delinquent with his payments, as stated above, rather than modifying the plaintiff's loan.

83.     Defendant reported to the credit bureau and various agencies that the plaintiff has been delinquent in his mortgage payments without a proper basis to do so.

84.     Defendant Bank further represented that the plaintiff was non-compliant in providing the documentation necessary to complete his application, including failure to submit an independent appraisal.

85.     Defendant Bank knew or should have known that the plaintiff was a self-employed, small business owner, whose reputation and business would be affected by a foreclosure proceeding.

86.     Defendant Bank's representations to the public are highly offensive to a reasonable person, especially given the facts and circumstances as alleged herein.

87.     Defendant Bank's representations were made knowingly or with reckless disregard as to their falsity and the light in which others would see the plaintiff.

88.     The plaintiff has suffered damages not less than ten million dollars.

**ELEVENTH COUNT (False Light against Bayview):**

1-79.     Paragraphs 1 through 79 are hereby incorporated by reference and made Paragraphs 1 through 79 of this Ninth Count.

80.     Defendant filed a lawsuit in May 2016 despite the plaintiff's ongoing good faith negotiation efforts regarding the final modification, the terms of which have been materially altered in comparison to the Trial Payment Plan as disclosed and discussed with the plaintiff.

81.     Defendant represented that the Property was being foreclosed upon through the filing of the May 2016 lawsuit and various online listings with Zillow, Trulia and other similar sites.

82.     Defendant represented to the public that the plaintiff was delinquent with his payments, as stated above, rather than appropriately decreasing the principle balance, which improperly includes fees and interest accrued as a result of the March 2013 litigation and Bank of America's unnecessary delay.

83.     Defendant reported to the credit bureau and various agencies that the plaintiff has been delinquent in his mortgage payments without a proper basis to do so.

84.     Defendant further represented that the plaintiff was non-compliant in providing the documentation necessary to complete his application, including failure to submit an independent appraisal.

85.     Defendant knew or should have known that the plaintiff was a self-employed, small business owner, whose reputation and business would be affected by a foreclosure proceeding.

86.     Defendant's representations to the public are highly offensive to a reasonable person, especially given the facts and circumstances as alleged herein.

87.   Defendant's representations were made knowingly or with reckless disregard as to their falsity and the light in which others would see the plaintiff.

88.   The plaintiff has suffered damages not less than ten million dollars.

WHEREFORE, Plaintiff prays for the following relief:

1. Fair just and reasonable damages;

2. Attorney's fees and costs pursuant to 42-110g, *et seq.*;

3. A set off in the amount of the interest and penalties disputed since December 8, 2012, damages the plaintiff suffered as a result of the Defendant Bank's conduct as alleged, damage to his credit and overall person as well as business reputation;

4. A finding by this Court that the filing of the March 2013 lawsuit and/or the May 2016 lawsuit against the plaintiff was unnecessary and unjustified; and

5. Such other and further relief that the court deems equitable.

PLAINTIFF
BHUVANESH SRINIVASAN,

By
Jeffrey J. Tinley, Esq.
Amith P. Rossetti, Esq.
Tinley, Renehan & Dost, LLP
60 North Main Street, Second Floor
Waterbury, CT 06702
Tel.: (203) 596-9030
Fax: (203) 596-9036
Juris No.: 402031

Page 25 of 26

RETURN DATE: SEPTEMBER 26, 2017      :      SUPERIOR COURT

                                   :

BHUVANESH SRINIVASAN            :      J.D. OF STAMFORD

                                     :

V.                                                 :

                                     :

BANK OF AMERICA, N.A. &           :      AT STAMFORD

                                     :

BAYVIEW LOAN SERVICING, LLC     :      AUGUST 21, 2017

## <u>STATEMENT OF AMOUNT IN DEMAND</u>

The amount in demand, exclusive of interests and costs, is in excess of FIFTEEN

THOUSAND DOLLARS ($15,000.00).

PLAINTIFF
BHUVANESH SRINIVASAN,

By
Jeffrey J. Tinley, Esq.
Amita P. Rossetti, Esq.
Tinley, Renehan & Dost, LLP
60 North Main Street, Second Floor
Waterbury, CT 06702
Tel.: (203) 596-9030
Fax: (203) 596-9036
Juris No.: 402031

OFFICER'S RETURN TO COURT

STATE OF CONNECTICUT:

COUNTY OF HARTFORD:       ss: Hartford          August 24, 2017

       Then and there and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named defendant, **BANK OF AMERICA, N.A.,** by leaving a verified true and attested copy of the within original **WRIT SUMMONS – CIVIL, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND,** with and in the hands of **BARRINGTON BOGLE,** who is authorized to accept service for the within named defendant at 30 State House Square, Suite 1, Hartford, Connecticut.

       And also on the 24th day of August 2017, I made due and legal service upon the within named defendant, **BAYVIEW LOAN SERVICING, LLC,** by leaving a verified true and attested copy of the within original **WRIT SUMMONS – CIVIL, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND,** with and in the hand of **MICHELE TAYLOR,** who is authorized to accept service for the within named defendant at Corporation Service Company, at 50 Weston Street, Hartford, Connecticut, Statutory Agent for Service for the within named Defendant.

       The within is the original **WRIT SUMMONS – CIVIL, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND,** with my doings hereon endorsed.

ATTEST:

*Maryann Douglas*

Maryann Douglas
State Marshal
Hartford County

FEES:

| | |
|---|---|
| Service | $80.00 |
| Pages | 56.00 |
| Endorsements | 2.80 |
| Travel | 29.00 |
| | |
| Total | $167.80 |